## PROMISSORY NOTE

$250,000                                                                                              Arapahoe County, Colorado
                                                                                                      September 4, 2019

FOR VALUE RECEIVED, the undersigned FRANCIS F. JOSEPH, M.D. Individually and as Managing Shareholders on behalf of Springs Medical Associates, Inc. ("Company") located at 155 Printers Parkway, Suite 230, Colorado Springs, CO 80910, (collectively "**Makers**") promise to pay to the order of MW INVESTMENT GROUP, LLC ("Holder");, with all payments made payable to MW INVESTMENT GROUP, LLC, at 8821 East Hampden Avenue, Suite 112, Denver, CO 80231 such place as the holder hereof may from time to time designate in writing, the principal sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) at a rate of thirty percent (30%) per annum as interest; with principal and all other sums payable hereunder to be paid in lawful money of the United States of America as follows:

(a) Makers shall immediately pay a $15,000.00 loan fee, which shall not be considered a payment toward the sum of $250,000 pursuant to this Promissory Note.

(b) Makers shall make interest payments of $15,000.00 on the first of each month in September, October, and November, 2019.

(c) Commencing December 1, 2019, and continuing the first of each week thereafter until July 31, 2020, Maker shall pay the sum of $10,634.00 per week, inclusive of principal and interest.

(d) A late fee of an additional 10% of the payment due will be charged for any payment that is not received within five (5) days of the due date.

(e) Any remaining balance shall be entirely due and owing as of July 31, 2020.

The security interest in this Note shall be further secured by the personal guarantee attached to this note, the Security and Pledge Agreement attached as Exhibit 1, and a UCC-1 financing statement to be filed with the Colorado Secretary of State upon request of Holder.

All payments on this Note shall be applied first to the payment of any costs, fees, default interest, late charges or other charges incurred in connection with the indebtedness evidenced hereby, and then to the reduction of the principal balance.

Makers and Holder hereby agree that this Note shall be secured by MW INVESTMENT GROUP, LLC's security interest in all assets, including but not limited to all accounts receivable from any source, owned by Springs Medical Associates, Inc. and the Makers individually and professionally. The Security Interest shall remain in effect until the full, entire and aggregate amount of this Note, TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) together with interest thereon, has been paid by Makers to Holder.

Initials: _____

Makers may voluntarily prepay this Note, in whole or in part, at any time, with three months of interest as a penalty.

The parties, including personal guarantors, acknowledge and affirm that there shall be no transfer in part or in whole of any interest of any security provided for payment of this Promissory Note without consent of all parties, including but not limited to any transfer of real property subject to this Promissory Note, property referenced and contained in any UCC-1 form, the business known as Springs Medical Associates, Inc., or any other property which provides security for this Promissory Note.

Time is of the essence of this Note. At the option of the Holder hereof, the entire unpaid principal balance and all other amounts payable hereunder shall become immediately due and payable without notice (i) upon Makers' failure to pay any sum due and owing hereunder as provided herein, or (ii) upon any change in the ownership of Springs Medical Associates, Inc.

An event of default will be deemed to have occurred if the Makers fail to make any payment of principal, interest, or any other charges under this Note, or to satisfy any other monetary obligation, covenant, or condition of this Note, when due, without any requirement for notice; or Makers fail, breach, or default in the performance of any of the non-monetary obligations, covenants or conditions in this Note, which is not cured within five (5) days following Note holders giving of notice.

Upon the occurrence of an Event of Default, the unpaid principal balance and all other amounts payable hereunder shall be due in their entirety and shall bear interest at thirty percent (30%) per annum. Further, upon any default by Makers, Holder shall have the immediate right to claim and take full possession of all assets and accounts and assume operation of all business activities of Springs Medical Associates, Inc.

The following shall constitute events of default:

> failure to pay any installment of principal or interest or any fee under this document when due if the amount remains uncured for 5 days;
> 
> sale, encumbrance, or other transfer of all or substantially all of the Makers' company's assets, other than in the ordinary course of business;
> 
> merger or consolidation of the Makers' company with any other entity;
> 
> the Maker's or Company's admission, in writing, of an inability to pay debts as they become due;
> 
> the Maker's or Company's assignment of assets or funds to benefit creditors;
> 
> the filing of a voluntary petition in bankruptcy under any chapter of the Bankruptcy Code by the Maker or Company, if not terminated within 30 days of filing;
> 
> the filing of an involuntary petition in bankruptcy or under any chapter of the Bankruptcy Code against the Maker or Company;



4955.2.517528.1

2

the Maker's or Company's consent to the appointment of a receiver for all or a substantial part of Maker's or Company's property;

the assumption of custody, attachment, or sequestration by a court of competent jurisdiction of all or a substantial part of the Maker's or Company's property if this custody, attachment, or sequestration is not suspended or terminated within 30 days of its inception; or

any default as described in any security agreement, pledge agreement, or similar document relating to collateral that provides security for payment of this Note.

Failure of the holder to exercise any option hereunder shall not constitute a waiver of the right to exercise the same in the event of any subsequent default or in the event of continuance of any existing default after demand for strict performance hereof.

No delay or omission on the part of Holder in exercising any right under this Note shall operate as a waiver of such right.

Makers, sureties, guarantors and endorsers hereof: (a) agree to be jointly and severally bound, (b) severally waive any homestead or exemption right against said debt, or security interests, (c) severally waive demand, diligence, presentment for payment, protest and demand, and notice of extension, dishonor, protest, demand and nonpayment of this Note, (d) consent that the holder hereof may extend the time of payment or otherwise modify the terms of payment of any part or the whole of the debt evidenced by this Note, at the request of any other person primarily liable hereon, and such consent shall not alter nor diminish the liability of any person, and (e) severally waive any setoff right against said debt, including, without limitation, any such rights allegedly arising under any security document.

This Note shall be binding upon Makers and their successors and assigns and shall inure to the benefit of the payee hereof and any subsequent holders of this Note, and their successors and assigns.

This Note shall be interpreted without regard to any rule or Canon of Construction which interprets agreements against the Draftsman.

The parties agree that any dispute as to the interpretation, compliance, enforcement, or any other issues involving this Promissory Note shall be decided by binding arbitration between the parties. The arbitration shall be conducted in accordance with the procedures of the American Arbitration Association.

Makers hereby agree that this Note constitutes a written consent to waiver of trial by jury pursuant to the provisions of all applicable laws and does hereby constitute and appoint Holder as Makers' true and lawful attorney-in-fact, which appointment is coupled with an interest. Makers do hereby authorize and empower Holder, in the name, place and stead of Makers, to file this Note with the clerk or judge of any court of competent jurisdiction as a statutory written consent to waiver of trial by jury, and a consent to entry of judgment and

attachment of any and all security interests. Makers acknowledge that they have had the opportunity to consult with counsel regarding this paragraph, that they fully understand its terms, contents and effect, and that they knowingly and voluntarily agree to the waiver of jury trial contained in this paragraph.

After maturity, including maturity upon acceleration, the unpaid principal balance and all other amounts payable hereunder shall bear interest at thirty percent (30%) per annum. Makers shall pay all costs and expenses, including reasonable attorneys' fees and court costs, incurred in the collection or enforcement of all or any part of this Note. All such costs and expenses shall be secured by the Security Documents.

Jurisdiction over matters between the parties shall be in Arapahoe County, Colorado. All matters involving this Promissory Note shall be construed, interpreted, and enforced according to the laws of the State of Colorado.

This Note may not be changed or amended unless approved in writing by all parties to the Note.

Each party acknowledges that they have sought advice of legal counsel, or have knowingly and voluntarily waived advice of legal counsel, with regard to terms of this Note, and the terms are knowingly, intelligently, and voluntarily entered into by the parties.

Every provision of this Note is intended to be severable. In the event that any term or provision in this Note is declared by an arbitrator or court of competent jurisdiction to be illegal or invalid for any reason whatsoever, such illegality and invalidity shall not affect the balance of the terms and provisions herein, which terms and provisions shall remain binding and enforceable.

IN WITNESS WHEREOF, these presents are executed as of the date first written above.

*"MAKERS"*

_____
FRANCIS F. JOSEPH MD, individually and on behalf of Springs Medical Associates, Inc.
ADDRESS:   10074   MATTHEW   LANE, HIGHLANDS RANCH, CO 80130

4955.2.517528.1

4

## Personal Guarantee

The undersigned hereby executes this Personal Guarantee for the Promissory Note entered into by Francis F. Joseph MD, individually and as Managing Shareholder on behalf of Springs Medical Associates, Inc. and MW Investment Group, LLC. As and for this Personal Guarantee of the Promissory Note, the undersigned avows and represents as follows:

1. The undersigned shall be responsible for all payments due and owing under the Promissory Note, as a party thereto.
2. The undersigned shall make all payments when due and owing, if not paid by the business entity that is the obligor under the Promissory Note, Springs Medical Associates, Inc.
3. Undersigned recognizes that any and all personal assets owned or belonging to the undersigned, or in which the undersigned has any rights, whether whole or partial, shall be subject to collection pursuant to this Personal Guarantee and the terms of the Promissory Note.
4. The undersigned acknowledges that if payment is due and owing, and not paid upon demand, the entirety of the Promissory Note shall be deemed accelerated and the entirety of the note shall be owed.
5. The undersigned acknowledges and agrees that in the event of any non-payment pursuant to terms of the Promissory Note, the undersigned shall be responsible for any and all attorneys' fees and costs incurred for enforcement and/or collection.
6. Undersigned avows and represents that no personal or business assets shall be transferred from ownership of the undersigned, if transferred for reason of avoidance of payment pursuant to this Personal Guarantee and the terms of the Promissory Note. Any such transfer shall be deemed a fraudulent transfer, subject to all remedies set forth under Colorado Law, including rescission and collection.

Wherefore the undersigned knowingly, intelligently, and voluntarily executes this Personal Guarantee this 4th Day of September, 2019.

AYA KSOURI
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20194016098
My Commission Expires April 26, 2023

FRANCIS F. JOSEPH MD
ADDRESS:

AYA KSOURI
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20194016096
My Commission Expires April 26, 2023

## SECURITY AND PLEDGE AGREEMENT

This Security and Pledge Agreement (*Agreement*) is entered into on September 4, 2019 by FRANCIS F. JOSEPH, M.D. ("*Debtor*") and MW INVESTMENT GROUP, LLC ("*Secured Party*").

## BACKGROUND

Debtor is the owner of all Shares (*Shares*) of **Springs Medical Associates, Inc.**, a Colorado corporation (*Corporation*). The reference to *Shares* as used in this Agreement shall include all ownership rights and control of all assets and operations of Springs Medical Associates, Inc.

Debtor has signed a promissory note for $ 250,000.00 dated September 4, 2019, payable to Secured Party ("*Note*").

Debtor is entering into this Agreement to provide Secured Party with ownership of Springs Medical Associates, Inc., and all assets of the Corporation, as security for the Note and all indebtedness, obligations, and liabilities of any kind of Debtor to Secured Party now or later arising from and relating to the Note (collectively, *Obligations*).

## AGREEMENT

The parties agree as follows.

**Section 1  Pledge and Collateral**

As security for the prompt, full payment when due by stated maturity, by acceleration, or otherwise of all the Obligations (as defined above), Debtor pledges, assigns, and grants to Secured Party a continuing first (except as otherwise specifically provided in this document) priority security interest in all of Debtor's right, title, and interest in:

> Shares held in Debtor's name and the proceeds of those Shares, including after-acquired Shares; and

> any amounts of money or other property later distributed or received in respect of the Shares or in exchange for the Shares.

The Shares, their proceeds, and any amount of money or other property later distributed or received in respect of or in exchange for the Shares must be delivered to Secured Party to hold subject to the terms of this Agreement as security for the Obligations. When held by Secured Party in accordance with this Agreement, this additional security is called, collectively, the *Security*. Despite the foregoing, Debtor has the right to receive cash distributions with respect to the Security and to vote the Security except as provided in Section 6.

**Section 2  Deliveries**

Initials: _____

Concurrent with the signing and delivery of this Agreement, Debtor must deliver or cause to be delivered to Secured Party:

> assignments for the Shares endorsed to Secured Party by Debtor; and

> the certificates (if any) representing all the Shares.

These assignments and certificates will be held by Secured Party in accordance with the terms of this Agreement and pursuant to Colorado law.

### Section 3   Covenants

Debtor further agrees that, so long as any Obligation remains outstanding:

> Debtor will not create or, from this date forward, permit to exist any lien, security interest, or other charge or encumbrance created after this date, against, in, or with respect to the Security without the Secured Party's prior written consent;

> Debtor will not abandon, sell, lease, assign, exchange, create warrants or options for, or otherwise transfer any of his or her rights to any of the Security without the Secured Party's prior written consent;

> Debtor will pay any tax or assessment imposed on Debtor or the Security when due; and

> Debtor agrees that he or she will warrant and defend the Shares against any claims and demands of all persons at any time claiming the same or any interest in the Shares adverse to Secured Party and take reasonable action to protect Debtor's title to the Shares as requested by Secured Party.

### Section 4   Representations and Warranties

Debtor represents and warrants that:

> Debtor has good, valid, and marketable title to the Shares, free and clear of all liens, pledges, claims, options, restrictions, encumbrances, and equities of any nature whatsoever except the security interest granted by this document and as otherwise specifically provided in this document;

> Debtor is not a party to, or bound by, any agreement, instrument, or understanding restricting the transfer of the Shares except for this Agreement;

> this Agreement has been duly signed and delivered by the Debtor and when duly signed and delivered to the Secured Party will constitute a valid and legally binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms, subject to bankruptcy, insolvency, reorganization, and other laws affecting the enforceability or creditors' rights generally and as limited by general principles of equity; and

> on delivery of the Shares to the Secured Party, this Agreement creates a valid first lien on and perfected security interest in the delivered Shares and their proceeds, subject to no prior or equal security interest, lien, charge, or other encumbrance, except as otherwise specifically provided in this document.

### Section 5   Events of Default

Debtor is in default of this Agreement when any of the following events or conditions occur:

> default in the payment or performance of any Obligation; or

Initials: _____

except as provided in this Agreement, Debtor's sale or encumbrance of the Security or his or her interest in the Security, or the making of any levy, seizure, or attachment of or on the Security.

**Section 6   Remedies**

When Debtor has defaulted under this Agreement, Secured Party is entitled to the remedies of a secured party under Article 9 of the Colorado Uniform Commercial Code or, where appropriate, under the analogous law of any other state. In addition, while any default has occurred and is continuing with respect to this Agreement or the Obligations and this default has not been effectively waived in writing by the Secured Party, the Debtor's rights to receive cash distributions, to vote, and to give consents, waivers, and ratifications are suspended. Upon a default of any of the Obligations and until all such defaults have been cured, in addition to any rights and remedies that may be available to a secured party under the Uniform Commercial Code as in effect at the time in Colorado, the Secured Party will be vested in and have the right to vote any or all of the Shares (whether or not the same have been transferred into his or her name or the name of nominee or nominees) and give all consents, waivers, and ratifications in respect of the Security and otherwise act with respect to the Shares. Without limiting the generality of the foregoing, Secured Party may vote the Shares, if otherwise allowed, to amend the Bylaws, and to manage the business of the Company. Debtor agrees that this provision constitutes his or her appointment of Secured Party as attorney in fact.

**Section 7   Attorney in Fact**

Secured Party is appointed the attorney in fact of Debtor for the purpose of signing documents and taking other action to perfect and protect his or her security interest in the Security, carrying out the provisions of this Agreement, and taking any action and signing any instruments that Secured Party determines necessary or advisable to accomplish these purposes or to protect his or her interest in the Security. This appointment as attorney in fact is irrevocable and coupled with an interest. Without limiting the generality of the foregoing, during any period of default with respect to the Obligations, Secured Party has the right and power to receive, endorse, and collect all checks made payable to the order of Debtor representing any payment in respect of the Security or any part of the Security and to give full discharge for the same.

**Section 8   Secured Party's Exoneration**

Except to the extent required by law or provided below, under no circumstances will Secured Party be considered to assume any responsibility, obligation, or duty relating to or arising out of any part or all of the Security. These risks remain solely with Debtor at all times. Except if required by law, Secured Party must not be required to take any further action of any kind to preserve or protect any of Secured Party's or Debtor's rights in or to the Security. Except if caused by Secured Party's gross negligence or willful misconduct, Debtor releases Secured Party from any claims, causes of action, and demands at any time arising out of or with respect to the signing, negotiation, and delivery of this Agreement, and Debtor agrees to hold Secured Party harmless with respect to any such claims, causes of action, and demands. Despite the foregoing, Secured Party's prior recourse to any part or all of the Security is not a condition of any demand, suit, or proceeding for payment or collection of any of the Obligations.

**Section 9   No Waiver; Amendment**

Initials: _____

Unless specifically waived in writing as provided in this Section, Secured Party will not, by any act, delay, omission, or otherwise, be considered to have waived any of his or her rights, remedies, powers, or privileges. Secured Party's waiver of any right, remedy, power, or privilege on any one occasion is not a bar to any future right, remedy, power, or privilege that Secured Party would otherwise have. No single or partial exercise of any right, remedy, power, or privilege precludes any other or any future exercise of any other right, remedy, power, or privilege. The rights, remedies, powers, and privileges provided in this Agreement to Secured Party are to the fullest extent permitted by law, are cumulative, and are not exclusive of any other rights, remedies, powers, or privileges provided by law. Any provisions of this Agreement may be amended or waived only if the amendment or waiver is in writing and signed by the party to be charged.

**Section 10  Termination**

After the full payment of all Obligations and the performance by Debtor of all agreements under this Agreement, this Agreement terminates, and Secured Party must assign, transfer, and deliver to Debtor any remaining Security then held by Secured Party, free and clear of any encumbrances created by Secured Party.

**Section 11  Expenses**

Debtor agrees to pay to Secured Party all reasonable costs and expenses (including reasonable fees and expenses for legal services of every kind) of, or incident to:

- enforcing, protecting, or preserving the Security or any right under any of the provisions of this Agreement;
- Debtor's failure or refusal to perform any obligations with respect of the Security;
- an actual or attempted sale, or any exchange, collection, compromise, or settlement in respect of the Security; and
- caring for the Security and maintaining or asserting Secured Party's rights and claims relating to the Security by litigation or otherwise, including expenses of insurance.

If incurred, these expenses are Obligations to Secured Party secured under this Agreement.

**Section 12  Notices**

Unless otherwise stated, all notices, requests, consents, claims, demands, waivers, and other communications called for under this Agreement must be in writing and will be deemed to have been given:

- when delivered by hand (with written confirmation of receipt);
- when received by the addressee if sent by a nationally recognized overnight courier (receipt requested);
- on the date sent by facsimile or email as a PDF document (with confirmation of transmission) if sent during recipient's normal business hours, and on the next business day if sent after normal business hours of the recipient; or
- on the fifth day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

If notice is required to be given to a minor or incapacitated individual, notice must be given to the minor or incapacitated individual's parent or Legal Representative.

Initials: 

The written notice must be sent to the respective parties at the party's last known address (or at the address a party has specified in a notice given in accordance with this Section). Each party shall notify the other party in writing within five days of any change to the party's address. Notice to the Debtor and Secured Party must be addressed as follows:

| | |
|---|---|
| If to Debtor: | Francis F. Joseph, M.D. |
| | 10074 Matthew Lane |
| | Highlands Ranch, CO 80130 |
| If to Secured Party: | c/o Moe Aduan |
| | 8821 East Hampden Avenue, Suite 112 |
| | Denver, CO 80231 |

**Section 13  Successors and Assigns**

This Agreement binds and benefits the parties and their respective successors and assigns, except that Debtor may not assign or transfer any of his or her rights or obligations without Secured Party's prior written consent. Any assignment of this Agreement in violation of this paragraph is void.

**Section 14  Governing Law**

This Agreement is governed, construed, and administered according to the laws of the State of Colorado, as from time to time amended, and any applicable federal law. No effect is given to any choice-of-law or conflict-of-law provision or rule (whether of the State of Colorado or any other jurisdiction) that would cause the application of the law of any jurisdiction other than those of the State of Colorado.

**Section 15  Venue; Submission to Jurisdiction**

The parties agree that any dispute as to the interpretation, compliance, enforcement, or any other issues involving this Security and Pledge Agreement shall be decided by binding arbitration between the parties. The arbitration shall be conducted in accordance with the procedures of the American Arbitration Association.

Debtor hereby agrees that this Note constitutes a written consent to waiver of trial by jury pursuant to the provisions of all applicable laws and does hereby constitute and appoint Secured Party as Debtor' true and lawful attorney-in-fact, which appointment is coupled with an interest. Debtor does hereby authorize and empower Secured Party, in the name, place and stead of Debtor, to file this Note with the clerk or judge of any court of competent jurisdiction as a statutory written consent to waiver of trial by jury, and a consent to entry of judgment and attachment of any and all interests. Debtor acknowledges that they have had the opportunity to consult with counsel regarding this paragraph, that they fully understand its terms, contents and effect, and that they knowingly and voluntarily agree to the waiver of jury trial contained in this paragraph.

.

**Section 16  Equitable Remedies**

Each party to this Agreement acknowledges that its breach or threatened breach of any of its obligations under this Agreement would give rise to irreparable harm to the other parties and monetary damages would not be an adequate remedy. Therefore, each party to this Agreement

Initials: _____

agrees that if any party breaches or threatens to breach any of its obligations, each of the other parties to this Agreement will be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance, and any other equitable relief available from the designated arbiter, and if the arbiter refuses to consider such issues, then to a court of competent jurisdiction (without any requirement to post bond). These equitable remedies are in addition to all other rights and remedies that may be available in respect of any breach.

**Section 17 Multiple Originals; Validity of Copies**

This Agreement may be signed in any number of counterparts, each of which will be deemed an original. Any person may rely on a copy of this Agreement that any party certifies to be a true copy to the same effect as if it were an original.

**Section 18 Consent**

For purposes of this Agreement, Debtor agrees that Secured Party may rescind any demand for payment of any of the Obligations without reserving any rights against Debtor and without notice to or further assent by Debtor. Debtor further agrees that the Obligations (including any other party's liability for them in whole or in part) or any Security, may, from time to time, in whole or in part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered, or released by Secured Party, and any Security may be sold, exchanged, waived, surrendered or released without reserving any rights against Debtor. Debtor remains bound by this Agreement despite any renewal, extension, modification, acceleration, compromise, amendment, supplement, termination, sale, exchange, waiver, surrender, or release. Neither the rights of Secured Party nor the obligations and liabilities of Debtor are conditioned by Secured Party's or any other person's pursuit of any right or remedy against Debtor or against any other person that may be or become liable in respect of all or any part of the Obligations or against any Security. For the purpose of this Section, *demand* includes the commencement and continuance of any legal proceedings.

**Section 19 Severability**

The invalidity or unenforceability of any provision of this Agreement does not affect the validity or enforceability of any other provision of this Agreement. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this Agreement are to be construed as if the invalid provision had never been included in this Agreement.

The parties signed this Agreement on the date written above.

DEBTOR:

AYA KSOURI
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20194016098
My Commission Expires April 26, 2023

Francis F. Joseph, M.D.

SECURED PARTY:

Initials: _____

_____
Moe Aduan, as Managing Member of MW Investment Group, LLC

Initials: _____